UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TESORO REFINING & MARKETING COMPANY LLC,<br><br>  Plaintiff,<br><br>  v.<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br>  Defendant.<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br>  Third-Party Plaintiff,<br><br>  v.<br><br>FOSTER WHEELER MARTINEZ, INC., *et al.*,<br><br>  Third-Party Defendants. | Case No. 14-cv-00930-JCS<br><br>**ORDER GRANTING THIRD-PARTY DEFENDANT'S MOTION TO DISMISS THIRD-PARTY PLAINTIFF'S COMPLAINT**<br><br>**Dkt. No. 42** |

**I. INTRODUCTION**

This case arises from an incident in which a refinery operated by Plaintiff Tesoro Refining & Marketing Company LLC ("Tesoro") lost electrical power and was forced to shut down temporarily. Tesoro filed suit against Pacific Gas and Electric Company ("PG&E"), which in turn filed a Third-Party Complaint for equitable indemnification against Foster Wheeler Martinez, Inc. and Martinez Cogen Limited Partnership (collectively, "FWM"), which own and operate a cogeneration plant that provides electricity to Tesoro's refinery. FWM has moved to dismiss the Third-Party Complaint, arguing that equitable indemnity is not available because (1) PG&E has not adequately alleged that FWM is liable to Tesoro in tort, and (2) a contract between FWM and

1  Tesoro absolves FWM of liability for the alleged damages.  The Court agrees with the first
2  argument and thus does not reach the second.  For the reasons discussed below, the Court
3  GRANTS FWM's motion, and DISMISSES PG&E's Third Party Complaint without leave to
4  amend.

## II.    BACKGROUND

### A.    Facts Alleged in Third-Party Complaint

Tesoro owns and operates the Golden Eagle Refinery (the "Refinery") in Martinez, California.  Third-Party Compl. ("TPC," dkt. 24) ¶¶ 1, 3.  The Refinery's primary power source is FWM's cogeneration plant (the "Cogen"), and the Refinery receives standby power from PG&E through PG&E's Tidewater Substation (the "Substation").  TPC ¶ 10.  On November 10, 2010, two circuit breakers were open at the Substation, disconnecting the Substation from PG&E's transmission system and leaving the Cogen, the Refinery, and PG&E's other customers in the area without power from PG&E.  TPC ¶ 11.  Within minutes of that disconnection, the Cogen's generators tripped offline, leaving the Refinery without electrical power.  TPC ¶ 12.  PG&E alleges that FWM should have known, based on FWM's "longstanding relationship with the Refinery and prior experience with Tesoro . . . that an unplanned outage at the Refinery could cause damage to the Refinery," TPC ¶ 17, and failed to adequately design, construct, maintain, and operate the Cogen to avoid damage to the Refinery when the disconnection from PG&E's transmission system occurred.  TPC ¶¶ 18−20, 24.

### B.    Complaints and Motion to Dismiss

Tesoro filed a complaint against PG&E in this Court on February 28, 2014, asserting diversity jurisdiction pursuant to 28 U.S.C. § 1332(a).  Compl. (dkt. 1) ¶ 8.  Tesoro's operative First Amended Complaint ("FAC") includes claims for breach of contract, negligence or gross negligence, and inverse condemnation, each based on the November 2010 power outage at the Refinery.  *See generally* FAC (dkt. 28).  PG&E filed its Third-Party Complaint for equitable indemnification against FWM on May 23, 2014, and has since filed an Answer (dkt. 35) to Tesoro's FAC.

The Third-Party Complaint asserts that FWM "owed a duty of care to Tesoro to ensure that

the Refinery did not experience an unplanned loss of power in the event that the Cogen became isolated from PG&E's transmission system," and that FWM "failed to act reasonably in the design, construction, maintenance, and operation of the Cogen" to avoid an outage.  TPC ¶¶ 16, 18.

Moving to dismiss, FWM argues that under California law, equitable indemnity is only available among joint tortfeasors.  Mot. to Dismiss ("MTD," dkt. 42) at 7.  FWM contends that PG&E has failed to plead facts establishing a tort duty owed by FWM to Tesoro, MTD at 7–8, and that if FWM breached any duty, it was based on contract and thus not subject to equitable indemnification, MTD at 9–10.  PG&E disputes that a tort duty is necessary, and argues that even if it is, FWM breached an independent non-contractual duty established by Civil Code § 1714.  Opp'n at 4–10.

FWM separately argues that it cannot be liable to PG&E because equitable indemnity is wholly derivative of the third-party defendant's liability to the original plaintiff, and FWM's Project Agreement with Tesoro expressly disclaims any liability for "indirect, incidental or consequential damages."  MTD at 10–11.  PG&E contends that the Court cannot consider the purported contract because the document attached to FWM's Motion is incomplete, and alternatively that the provision on which FWM relies does not encompass the damages at issue in this case.  Opp'n at 12−16.  PG&E also requests judicial notice of a complaint that Tesoro filed against FWM in 2008, based in part on a previous power outage.  Dkt. 47.  Because the Court agrees with FWM that PG&E cannot allege a tort duty supporting its claim to equitable indemnity, the Court does not reach the parties' arguments regarding the purported Project Agreement.

**III.   ANALYSIS**

 **A.   Jurisdiction**

This Court has supplemental jurisdiction over PG&E's Third-Party Complaint pursuant to 28 U.S.C. § 1367:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such

supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

The Court has jurisdiction over Tesoro's underlying Complaint against PG&E pursuant to 28 U.S.C. § 1332(a) because the parties are citizens of different states and the amount in controversy exceeds $75,000. Compl. ¶ 8. For the purposes of diversity jurisdiction, Tesoro is a citizen of Delaware and Texas, and PG&E is a citizen of California. Compl. ¶¶ 6, 7. Because PG&E's Third-Party Complaint is based on the same alleged incident and damages as the underlying Complaint, it is sufficient to establish supplemental jurisdiction.

Having determined that jurisdiction is proper under § 1367, the Court need not address PG&E's contention that § 1332(a) provides a separate basis for jurisdiction over the Third-Party Complaint. *See* TPC ¶ 7. The Court notes, however, that the Third-Party Complaint does not indicate FWM's principal place of business, which would be necessary to assess diversity jurisdiction. *See* 28 U.S.C. § 1332(c)(1); TPC ¶¶ 5, 6.

### B. Legal Standards

#### i. Application of California Law

"Under *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), when a federal court exercises diversity or pendent jurisdiction over state-law claims, 'the outcome of the litigation in the federal court should be substantially the same, so far as legal rules determine the outcome of a litigation, as it would be if tried in a State court.'" *Felder v. Casey*, 487 U.S. 131, 151 (1988) (quoting *Guaranty Trust Co. v. York*, 326 U.S. 99, 109 (1945)). "Pursuant to *Erie* and its progeny, federal courts [exercising jurisdiction over state-law claims] apply state substantive law and federal procedural law." *Feldman v. Allstate Ins. Co.*, 322 F.3d 660, 666 (9th Cir. 2003). "Federal courts should 'hesitate prematurely to extend the law . . . in the absence of an indication from the [state] courts or the [state] legislature that such extension would be desirable.'" *Del Webb Cmtys., Inc. v. Partington*, 652 F.3d 1145, 1154 (9th Cir. 2011) (quoting *Torres v. Goodyear Tire & Rubber Co.*, 867 F.3d 1234, 1238 (9th Cir. 1989)) (alterations in original).

#### ii. Motion to Dismiss

A complaint may be dismissed for failure to state a claim for which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 12(b)(6). "The

1    purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the

2    complaint." *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).  Generally, a

3    plaintiff's burden at the pleading stage is relatively light.  Rule 8(a) of the Federal Rules of Civil

4    Procedure states that "[a] pleading which sets forth a claim for relief . . . shall contain . . . a short

5    and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P.

6    8(a).

7        In ruling on a motion to dismiss under Rule 12, the court analyzes the complaint and takes

8    "all allegations of material fact as true and construe[s] them in the light most favorable to the non-

9    moving party."  *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).  Dismissal

10   may be based on a lack of a cognizable legal theory or on the absence of facts that would support a

11   valid theory.  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  A complaint

12   must "contain either direct or inferential allegations respecting all the material elements necessary

13   to sustain recovery under some viable legal theory."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

14   562 (2007) (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).

15   "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a

16   cause of action will not do.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550

17   U.S. at 555).  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further

18   factual enhancement.'"  *Id*. (quoting *Twombly*, 550 U.S. at 557).

19       If a complaint is dismissed for failure to state a claim, "there is a general rule that parties

20   are allowed to amend their pleadings," but the court may deny leave to amend if "any amendment

21   would be an exercise in futility."  *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1298 (9th Cir.

22   1998).

23       **C.    Scope of Equitable Indemnity**

24       PG&E's sole cause of action is for equitable indemnity.  TPC at 4−5.  The doctrine of

25   equitable indemnity "permit[s] a concurrent tortfeasor to obtain partial indemnity from other

26   concurrent tortfeasors on a comparative fault basis."  *Am. Motorcycle Ass'n v. Superior Court*, 20

27   Cal. 3d 578, 598 (1978).  "A defending party may, as third-party plaintiff, serve a summons and

28   complaint on a nonparty who is or may be liable to it for all or part of the claim against it."  Fed.

1  R. Civ. P. 14(a)(1); *see also Am. Motorcycle*, 20 Cal. 3d at 607 ("[A] defendant is generally
2  authorized to file a cross-complaint against a concurrent tortfeasor for partial indemnity . . . even
3  when such concurrent tortfeasor has not been named a defendant in the original complaint."). 
4  From a procedural standpoint, PG&E properly filed its Third-Party Complaint against FWM under
5  Rule 14(a)(1).

6  In California, equitable indemnity requires that, "[w]ith limited exception, there must be
7  some basis for *tort liability* against the proposed indemnitor," which would generally rest on a
8  duty owed by the indemnitor to the underlying plaintiff.  *Stop Loss Ins. Brokers, Inc. v. Brown &
9  Toland Med. Grp.*, 143 Cal. App. 4th 1036, 1040 (2006); *BFGC Architects Planners, Inc. v.
10 Forcum/Mackey Constr., Inc.*, 119 Cal. App. 4th 848, 852 (2004) (emphasis added).[1]  "California
11 law does not permit equitable apportionment of damages for breach of contract . . . ."  *Stop Loss*,
12 143 Cal. App. 4th at 1041 n.2.  A California appellate court squarely rejected a plaintiff's
13 argument that "no 'predicate common law tort' is required to support its claim for equitable
14 indemnity," and that the focus should rather "be on apportionment of the loss based on equity and
15 good conscience."  *BFGC*, 119 Cal. App. 4th at 852.  Instead, "[t]he question is whether, with
16 respect to the claims analysis, [FWM] owed [Tesoro] a duty of care *sounding in tort*."  *See id.* at
17 1041.

18 In *Stop Loss*, the Regents of the University of California (as operator of the UCSF Medical
19 Center hospital) used two intermediaries to administer an insurance policy for patient claims
20 exceeding a certain value.  *Id.* at 1038−39.  When an omission in required disclosures caused the
21 insurance provider to deny a claim, the Regents filed a complaint against one of the intermediaries
22 (Stop Loss Insurance Brokers), which then sought equitable indemnity from the other intermediary
23 (Brown & Toland Medical Group, "BTMG").  *Id.*  Stop Loss alleged that BTMG had a duty to
24 the Regents to properly analyze claims and provide timely, accurate information to Stop Loss to
25 administer such claims.  *Id.* at 1040.  The Court of Appeal held that "[t]he law imposes no duty on
26 strangers to promptly process another's data that is comparable to the duty imposed on all persons

---

[1] The exceptions relate to vicarious liability, strict liability, and implied contractual indemnity, *see BFGC*, 119 Cal App. 4th at 852, none of which are raised by PG&E's Third-Party Complaint.

to exercise due care to avoid injuring others," and that "[a]t most, if BTMG assumed a duty to process claims in a timely fashion, and the Regents relied on BTMG to do so, BTMG's performance was undertaken pursuant to an implied contract." *Id.* at 1041. Thus, because "[a] person may not ordinarily recover in tort for the breach of duties that merely restate contractual obligations," the court affirmed dismissal of the claim for indemnity. *Id.* at 1041−42 (quoting *Aas v. Superior Court*, 24 Cal. 4th 627, 643 (2000)).

The majority in *Stop Loss* explicitly rejected the concurring judge's view that negligent performance of a contract creates tort liability sufficient to support equitable indemnity.[2] *Id.* at 1043. The majority relied on the California Supreme Court's decision in *Erlich v. Menezes*, 21 Cal. 4th 543 (1999). *See id.* Although in some circumstances the same act may support both contract and tort liability, that decision held that "breach of contract becomes tortious only when it also violates a duty independent of the contract arising from principles of tort law." *Erlich*, 21 Cal. 4th at 551. "An omission to perform a contract obligation is never a tort, unless that omission is also an omission of legal duty," and "mere negligent breach of a contract" is not sufficient to impose tort liability. *Id.* at 551−52 (citations omitted). The California Supreme Court went on to explain that exceptions allowing tort liability for breach of contractual duties generally require intentional or deceitful conduct.[3] *Id.* at 553−54. The appellate court in *Stop Loss* therefore concluded that "[b]ecause negligent performance of a contract gives rise to contract damages only, such alleged negligence will not support a claim for equitable indemnity." 143 Cal. App. 4th at 1044 (citations omitted).

**D.    PG&E's Arguments that *Stop Loss* Does Not Bar Its Claim**

PG&E makes two arguments as to why *Stop Loss* should not bar its claim for indemnity. First, PG&E contends that contrary to *Stop Loss*, equitable indemnity is appropriate for negligent

---

[2] Even the judge who wrote separately concurred that equitable indemnity requires tort liability, acknowledging that "any such fundamental change should come from [the California] Supreme Court, or from the Legislature." *Id.* at 1055 (Pollack, J., concurring). He disagreed with the majority that negligent performance of a contract is insufficient to establish such liability, but ultimately concurred in the judgment for other case-specific reasons. *Id.* at 1055−64.
[3] PG&E has not alleged any intentional wrongdoing or deceit by FWM. Rather, PG&E's claim is based on FWM's alleged negligence. *See, e.g.*, TPC ¶ 15 ("Upon information and belief, [FWM] failed to exercise reasonable care and caution . . . .").

7

performance of contractual obligations. Opp'n at 4−7. Second, PG&E argues that FWM owed Tesoro a tort duty of care distinct from its contractual obligations, arising from California Civil Code section 1714 and the California Supreme Court's decision in *Langley v. Pacific Gas & Electric Co.*, 41 Cal. 2d 655 (1953). Opp'n at 7−10. For the reasons discussed below, the Court disagrees.

### i. Negligent Breach of Contract Is Not Sufficient for Equitable Indemnity

PG&E argues that the California Supreme Court's decision in *Prince v. Pacific Gas & Electric Co.*, 45 Cal. 4th 1151 (2009), eliminates any requirement that a party seeking equitable indemnity must establish tort liability. Opp'n at 4−5. A footnote of that case quotes *BFGC* for the proposition that "[j]oint and several liability in the context of equitable indemnity is fairly expansive.' It extends beyond the term 'joint tortfeasor' and may 'apply to acts that are concurrent or successive, joint or several, as long as they create a detriment caused by several actors.'" *Prince*, 45 Cal. 4th at 1158 n.3 (quoting *BFGC*, 119 Cal. App. 4th at 852) (citation omitted). In context, however, the *BFGC* court's "expansive" view pertained to whether the parties must be "*joint* tortfeasors," not whether equitable indemnity is available without tort liability—as discussed above, that opinion went on to hold that "[w]ith limited exception, there must be some basis for tort liability against the proposed indemnitor." *BFGC*, 119 Cal. App. 4th at 852. *Prince* cited *BFGC* approvingly, and there is nothing in the *Prince* opinion to suggest that the California Supreme Court intended to overrule the appellate court's holding with respect to tort liability. *See Prince*, 45 Cal. 4th at 1158 n.3. It in fact had no reason to reach that issue, as the plaintiff in *Prince* acknowledged that she could not recover "traditional" equitable indemnity, and instead sought implied contractual indemnity.[4] *Id.* at 1159. *Prince* is therefore not relevant to the issues before this Court.

PG&E also cites two cases in which California appellate courts allowed indemnity for

---

[4] "Historically, [implied contractual] indemnity was available when two parties in a contractual relationship were both responsible for injuring a third party . . . ." *Prince*, 45 Cal. 4th at 1159. In the case presently before the Court, PG&E's Third-Party Complaint does not allege any contractual relationship between PG&E and FWM, and PG&E has not pursued an implied contractual indemnity claim.

8

negligent performance despite the existence of a contract: *Willdan v. Sialic Contractors Corp.*, 158 Cal. App. 4th 47 (2007), and *Stonegate Homeowners Ass'n v. Staben*, 144 Cal. App. 4th 740 (2006). Both *Willdan* and *Stonegate* address the specific scenario of a construction project gone wrong, in which the client sued the general contractor, which then sought indemnification from a subcontractor. *See Willdan*, 158 Cal. App. 4th at 50−52; *Stonegate*, 144 Cal. App. 4th at 742−45. Both cases rely on a "a well-known treatise on real estate and construction law" for the proposition that "'[t]he owner ordinarily has a cause of action against the subcontractor . . . in negligence as a party within the area of foreseeable risk.'" *Willdan*, 158 Cal. App. 4th at 58 (*quoting Stonegate*, 144 Cal. App. 4th at 748). Thus, because the owner could recover from the subcontractor on a negligence claim, the general contractor could seek equitable indemnity from the subcontractor. *See id.*

*Willdan* and *Stonegate* are also not applicable to the issues before the Court. The principle of subcontractor liability applied in those cases appears to be specific to construction contracts, and intended to provide a remedy to owners who are not in privity with subcontractors and thus have no direct contractual claim. *See Stonegate*, 144 Cal. App. 4th at 748 (citing a real estate and construction law treatise discussing the owner's cause of action "even though there is no privity of contract between the owner and the subcontractor"); *Willdan*, 158 Cal. App. 4th at 58 (same). PG&E has provided no authority allowing tort damages for negligent breach of contract where the wronged party had a direct contractual relationship with the party alleged to have breached. Keeping in mind the California Supreme Court's instruction that "mere negligent breach of contract" does not give rise to tort liability, *see Erlich*, 21 Cal. 4th at 552, this Court declines to extend the rule of *Willdan* and *Stonegate* beyond the context in which the California courts have applied it. To establish tort liability supporting equitable indemnity, PG&E must show that FWM owed Tesoro a duty "completely independent of the contract." *See id.*

### ii. No Independent Tort Duty Applies

The Third-Party Complaint alleges that FWM "owed a duty of care to Tesoro to ensure that the Refinery did not experience an unplanned loss of power in the event that the Cogen became isolated from PG&E's transmission system." TPC ¶ 16. Even if the Court were to

1  construe that statement as alleging a tort duty independent of any contract, such "labels and
2  conclusions" are not entitled to deference under *Iqbal*. *See* 556 U.S. at 678 (quoting *Twombly*,
3  550 U.S. at 555). The Court therefore examines the authorities that PG&E proffers as establishing
4  an applicable tort duty of care.

5  PG&E contends that California Civil Code section 1714(a) creates an independent statutory duty. That section provides in relevant part that "[e]veryone is responsible, not only for the result of his or her willful acts, but also for an injury occasioned to another by his or her want of ordinary care or skill in the management of his or her property or person." Cal. Civ. Code § 1714(a). "In other words, 'each person has a duty to use ordinary care and is liable for injuries caused by his failure to exercise reasonable care in the circumstances . . . .'" *Cabral v. Ralphs Grocery Co.*, 51 Cal. 4th 764, 771 (2011) (quoting *Parsons v. Crown Disposal Co.*, 15 Cal. 4th 456, 472 (1997)) (ellipsis in original). Section 1714(a) essentially codifies the basic duty of care for negligence claims in California.[5] *See Mega RV Corp. v. HWH Corp.*, 225 Cal. App. 4th 1318, 1340 (2014) (citing section 1714(a) as a "general principle[] of negligence law"); *Capri v. L.A. Fitness Int'l, LLC*, 136 Cal. App. 4th 1078, 1085 (2006) (comparing more specific statutes to "the broad statement of negligence expressed in Civil Code section 1714").

If section 1714 were sufficient to support independent tort damages for omission of a contractual duty, it is difficult to imagine a negligent breach that would not fall within its scope. Such a result would wholly negate the California Supreme Court's holding that negligent breach of contract is generally insufficient to establish tort liability—"the limitation would be meaningless, as would the statutory distinction between tort and contract remedies." *See Erlich*, 21 Cal. 4th at 552.

PG&E also points to the California Supreme Court's 1953 decision in *Langley*, which held

---

[5] FWM argues in its Reply that because PG&E's Third-Party Complaint does not cite section 1714 explicitly, "PG&E's belated attempts to recast its allegations [by citing section 1714 in its Opposition] should be disregarded." Reply at 9. But since the relevant portion of the statute merely describes the standard of care for negligence, and the Third-Party Complaint clearly invokes negligence underlying its claim for equitable indemnity, FWM had adequate notice of PG&E's theory. *See* TPC ¶ 15 ("[FWM] failed to exercise reasonable care . . . ."); *id.* ¶ 21 (alleging "negligent or otherwise tortious conduct").

that as a public utility, PG&E (a party to both *Langley* and the present case) had a "general duty to exercise reasonable care in operating its system," and thus could be held liable for failing to give notice of a power failure to a customer who PG&E knew would face serious losses as a result. 41 Cal. 2d at 660−61. The *Langley* court held that "[b]y undertaking to supply electricity to plaintiff, [PG&E] obligated itself to exercise reasonable care toward him," and although the plaintiff brought his action for breach of contract, PG&E's "failure to exercise such care has the characteristics of both a breach of contract and a tort." *Id.* at 662.

Assuming that *Langley* describes the sort of "completely independent" duty that would support tort liability under the California Supreme Court's more recent decision in *Erlich*, 21 Cal. 4th at 552, the source of that duty is not applicable to FWM. As PG&E acknowledges, *Langley* derived its duty from a provision of the Public Utilities Code. *See* Opp'n at 9; *Langley*, 41 Cal. 2d at 661 (citing Cal. Pub. Util. Code § 451). PG&E also acknowledges that FWM is not a regulated public utility subject to that provision. Opp'n at 8.

The *Langley* court chose to cite a provision of that Public Utilities Code rather than Civil Code section 1714, which applies to "everyone." Cal. Civ. Code § 1714(a). There are valid policy reasons to treat public utilities differently from other business entities—indeed, the very existence of the Public Utilities Code evinces a decision by the California legislature that special regulation is appropriate. *Langley*'s reliance on cases related to common carriers—another class of business entities held to special standards and duties to the public[6]—also supports the conclusion that the duty announced in that case does not translate to other entities like FWM that do not share the same quasi-public role. *See* 41 Cal. 2d at 661 (citing, e.g., *E. Ry. Co. of N.M. v. Littlefield*, 237 U.S. 140, 145 (1915)). Public utilities serve large numbers of customers, many of whom do not have sufficient bargaining power to effectively negotiate the terms of a contract. *Langley* established a duty and remedy that customers of the utilities might not have been able to obtain for themselves through contract. In contrast, private parties are more likely to be able to negotiate for the level of service required, as well as the appropriate remedies in case of a breach.

---

[6] *See, e.g.*, *Mass v. Brawsell Motor Freight Lines, Inc.*, 577 F.2d 665, 667 (9th Cir. 1978).

11

The California Supreme Court has cautioned against "converting every contract breach into a tort," because "[r]estrictions on contract remedies serve to protect the 'freedom to bargain over special risks and [to] promote contract formation by limiting liability to the value of the promise.'" *Erlich*, 21 Cal. 4th at 553 (quoting *Freeman & Mills, Inc. v. Belcher Oil Co.*, 11 Cal. 4th 85, 98 (1995)) (second alteration in original). Applying the tort liability recognized in *Langley* to contractual relationships outside of the public utility context, such as FWM's relationship with Tesoro, would displace that bargaining process and undermine *Erlich*.[7]

### E. Disposition

A California appellate court observed ten years ago that "the body of law defining and applying principles of equitable indemnity has not fully gelled but is still evolving." *BFGC*, 119 Cal. App. 4th at 852. It is possible that at some point in the future, the California Supreme Court could extend *Willdan* and *Stonegate* outside of the construction context, overruling *Stop Loss*. That court might also extend *Langley* to electricity providers that are not public utilities, creating an exception to *Erlich*'s distinction between tort and contract damages. This Court, however, "hesitate[s] prematurely to extend the law." *Del Webb*, 652 F.3d at 1154. As the Ninth Circuit has instructed, federal courts' role in adjudicating state-law claims is not to blaze new trails, and the Court finds no "indication from the [state] courts or the [state] legislature that such extension would be desirable" in this case. *See id.* (citation omitted).

The Court therefore finds *Stop Loss* applicable to the case at hand. As in that case, the damages alleged here are a foreseeable consequence of the alleged wrongful acts or omissions. Nevertheless, "[t]he law imposes no duty on strangers" to provide one another with electrical power, any more than to "promptly process another's data." *Cf. Stop Loss*, 143 Cal. App. 4th at

---

[7] Another notable distinction is that *Langley* did not address PG&E's duty to provide power to customers, but rather an ancillary duty to mitigate harm to a customer by notifying him of a power failure. *See* 41 Cal. 2d at 660. The *Langley* court explicitly acknowledged that PG&E was "not an insurer or guarantor of service." *Id*. The Court is aware of only one case imposing liability under *Langley* for failure to take adequate measures to prevent a power outage, and that case was designated as non-precedential by the California courts. *See Mobil Oil Corp. v. S. Cal. Edison Co.*, No. B145834, 2003 WL 147770 (Cal. Ct. App. Jan. 21, 2003). Further, the court in *Mobil Oil* applied *Langley* to find *contract* liability under the parties' agreement and a tariff rule approved by the California Public Utilities Commission, not tort liability. *Id.* at *6.

12

1041; *see also Erlich v. Menezes*, 21 Cal. 4th at 552 ("[F]oreseeability alone is not sufficient to create an independent tort duty."). Thus, any duty of FWM to provide reliable power to the Refinery arises either, as FWM suggests, from an express contract, *see* MTD at 10−11, or from an implied contract based on FWM's "longstanding relationship with the Refinery and prior experience with Tesoro." *See* TPC ¶ 17; *Stop Loss*, 143 Cal. App. 4th at 1041. Breach of that contractual duty—even if negligent—does not give rise to tort liability and cannot support a claim for equitable indemnity. This holding is consistent with other federal courts that have considered California equitable indemnity claims under *Stop Loss*.[8] PG&E's Third-Party Complaint is therefore dismissed for failure to state a claim on which relief can be granted.

## IV. CONCLUSION

For the reasons stated above, FWM's motion to dismiss PG&E's Third-Party Complaint is GRANTED. Because any duty of FWM to provide reliable power to Tesoro was governed by an implied or explicit contract rather than by tort law, any amendment to PG&E's claim for equitable indemnity would be futile. *See Steckman*, 143 F.3d at 1298. The Third-Party Complaint is therefore DISMISSED WITH PREJUDICE.

**IT IS SO ORDERED.**

Dated: August 29, 2014

_____
JOSEPH C. SPERO
United States Magistrate Judge

---

[8] *E.g.*, *In re Med. Capital Sec. Litig.*, 842 F. Supp. 1208, 1213−15 (C.D. Cal. 2012) ("Quite simply, California law is settled and it does not permit the Banks' claims for equitable indemnity because the Banks and BD Defendants are not joint tortfeasors. The California Court of Appeals has decided this issue and there is no evidence that the California Supreme Court would rule otherwise."); *Nada Pac. Corp. v. Power Eng'g & Mfg., Ltd.*, No. C 13-04325 LB, 2014 WL 555258, at *7−8 (N.D. Cal. Feb. 10, 2014); *Allied Property & Cas. Ins. Co. v. Dick Harris, Inc.*, No. Civ. 2:13-00325 WBS DAD, 2013 WL 2145961, at *6 (E.D. Cal. May 15, 2013).

13