UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TESORO REFINING & MARKETING COMPANY LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br>    Defendant. | Case No. 14-cv-00930-JCS<br><br>**ORDER REGARDING TARIFF RULE 2**<br><br>Re: Dkt. Nos. 176, 178 |

## I. INTRODUCTION

This case involves allegations by Plaintiff Tesoro Refining & Marketing Company LLC ("Tesoro") that Defendant Pacific Gas and Electric Company ("PG&E") is responsible for damage and loss caused by a power outage at Tesoro's Golden Eagle Refinery (the "Refinery") in Martinez, California. At the pretrial conference on January 8, 2015, the parties raised for the first time the issue of whether PG&E Electric Rule No. 2 ("Tariff Rule 2"), a tariff rule approved by the California Public Utilities Commission ("CPUC"), establishes a duty on the part of Tesoro and/or limits the liability of PG&E in ways relevant to this case. The Court heard argument on January 15, 2016. This Order resolves some issues related to the application of Tariff Rule 2 to this case.

The parties are instructed to file simultaneous supplemental briefs regarding the scope of the "agents, employees, or licensees" clause of Tariff Rule 2, not to exceed five pages each, no later than Thursday, January 21, 2016. Each party may file a response of no more than five pages no later than Tuesday, January 26, 2016.[1]

---

[1] The parties have consented to the jurisdiction of the undersigned magistrate judge for all purposes pursuant to 28 U.S.C § 636(c).

## II. BACKGROUND

### A. Factual Overview[2]

Although the Refinery primarily drew power from an adjacent cogeneration plant (the "Cogen") operated by non-parties Foster Wheeler Martinez, Inc. and Martinez Cogen Limited Partnership (collectively, "FWM"), Tesoro also had an agreement for standby electricity service from PG&E. In November of 2010, an unexpected disruption of PG&E's transmission lines to PG&E's Tidewater Substation (the "Substation") isolated, or "islanded," the Refinery, the Cogen, and local PG&E customers in Concord, California from PG&E's electrical grid, with the Cogen as the only remaining source of power for the Refinery and the other local customers. The Cogen tripped offline, causing an unplanned loss of power at the Refinery and allegedly damaging the Refinery.

### B. Procedural History

The Court held a pretrial conference on January 8, 2016, and heard argument on the parties' motions in limine and motions to exclude expert testimony. At that conference, the parties raised for the first time the issue of whether and how Tariff Rule 2 affects Tesoro's duties and PG&E's potential liability in the present case. According to the parties, they had not realized that this tariff rule was a point of disagreement until meeting and conferring to resolve disputed jury instructions, and they are not able to agree on jury instructions, as well as the extent to which the parties may present evidence and argument regarding Tariff Rule 2, without the Court's assistance in resolving the scope and application of the tariff rule. The Court ordered the parties to submit simultaneous briefs addressing the issue no later than January 13, 2016. The parties have each submitted a brief as instructed. *See* PG&E Br (dkt. 176); Tesoro Br. (dkt. 178).

Tesoro "requests that [PG&E] be precluded from instructing the jury based on PG&E Tariff Rule No. 2, Section E" because, according to Tesoro, the rule is not applicable to the facts

---

[2] This section is intended only as a brief summary. The Court's November 2015 Order denying a motion for partial summary judgment by PG&E provides a more detailed description of the facts of the case. *See* Order Den. Mot. for Summ. J. ("MSJ Order," dkt. 120), *Tesoro Refining & Mktg. Co. LLC v. Pac. Gas & Elec. Co.*, __ F. Supp. 3d __, 2015 WL 7350446 (N.D. Cal. Nov. 20, 2015).

1  of the case and does not limit PG&E's liability in any relevant way.  Tesoro Br. at 1.  PG&E
2  contends that the Tariff Rule is an appropriate subject for jury instructions, evidence, and
3  argument because it establishes a duty of Tesoro to provide and maintain protective devices and
4  bars liability if negligence by Tesoro or its agents—which PG&E contends include FWM—in
5  fulfilling that duty contributed to the alleged damages at issue.  *See generally* PG&E Br.

**III.   ANALYSIS**

**A.   Legal Standard for CPUC Tariff Rules**

Tariff rules approved by the CPUC have the force of law, but California courts also construe them as contracts and apply principles of contract interpretation to resolve ambiguity. *E.g.*, *Pink Dot, Inc. v. Teleport Commc'ns Grp.*, 89 Cal. App. 4th 407, 415 (2001); *Transmix Corp. v. S. Pac. Co.*, 187 Cal. App. 2d 257, 263 (1960) ("A tariff is in the nature of a contract . . . ."); *but see Waters v. Pac. Tel. Co.*, 12 Cal. 3d 1, 10 (1974) ("[G]eneral principles which might govern disputes between private parties are not necessarily applicable to disputes with regulated utilities.").  The Court previously held that although contract interpretation is in some circumstances an issue of fact for the jury, "interpretation of tariff rules adopted by the CPUC is a question of law appropriate for the Court to resolve." MSJ Order at 15, 2015 WL 7350446 at *9.

"The subject of limitations upon liability of . . . utilities has long been considered to be a proper subject for commission regulation and supervision . . . ." *Waters*, 12 Cal. 3d at 6.  "The limitation of liability provisions are an inherent part of the established rates and have the force and effect of law [and thus] are binding on the public generally . . . ." *Trammell v. W. Union Tel. Co.*, 57 Cal App. 3d 538, 551 (1976).[3]  "'The rule has been stated many times that if there is an ambiguity in a tariff any doubt in its interpretation is to be resolved in favor of the [nondrafter and against the utility].'" *Pink Dot*, 89 Cal. App. 4th at 415 (quoting *Transmix*, 187 Cal. App. 2d at 267, and citing Cal. Civ. Code § 1654) (alteration in original).  In evaluating whether Tariff Rule 2 creates a relevant limitation of liability, the Court therefore considers whether Tariff Rule 2

---

[3] At least one California court has held that CPUC tariffs cannot insulate a public utility from liability for intentionally tortious conduct.  *Pink Dot*, 89 Cal. App. 4th at 415.  Tesoro does not argue that its claims here are based on intentional conduct by PG&E.

"clearly and explicitly express[es]" a purpose of protecting PG&E from liability for its conduct related to the November 2010 outage at Tidewater and the Refinery. *See Waters*, 12 Cal. 3d at 10.

### B. Text of Tariff Rule 2, Section E(1)

The relevant portion of Tariff Rule 2 reads as follows:

> It shall be the applicant's responsibility to furnish, install, inspect and keep in good and safe condition at his own risk and expense, all appropriate protective devices of any kind or character, which may be required to properly protect the applicant's facilities.
>
> PG&E shall not be responsible for any loss or damage occasioned or caused by the negligence, or wrongful act of the applicant or of any of his agents, employees or licensees in omitting, installing, maintaining, using, operating or interfering with any such protective devices.

Tariff Rule 2 § E(1) (paragraph break added).[4] Tesoro argues that Tariff Rule 2 creates neither a duty nor a limitation of liability that is relevant to this case. This Order addresses each argument in turn.

### C. Tariff Rule 2 Creates a Potentially Relevant Duty

"Tesoro objects to the use of Section E [of Tariff Rule 2] to establish a standard of care for Tesoro." Tesoro Br. at 2.

This objection is based in part on Tesoro's assertion that deriving a jury instruction from Tariff Rule 2 is equivalent to allowing PG&E's expert Richard Swanson to testify that tariff rules create a standard of care. *See id.* While Tesoro is correct that the Court declined to allow Swanson to offer such testimony, the basis for that ruling was that Swanson has no relevant legal expertise and, regardless, instructing the jury on the law is the role of the Court, not of expert witnesses. The Court did not hold in the context of Tesoro's *Daubert* motion that Tariff Rule 2 does not create a duty.

There is no dispute that Tesoro is the "applicant" for the purpose of Tariff Rule 2 because Tesoro stands in the shoes of Tosco Corporation, which originally entered the Standby Agreement with PG&E.[5] Tariff Rule 2 plainly provides that it is "the applicant's responsibility to furnish,

---

[4] Tariff Rule 2 is included in the record as Exhibit A to the declaration of Robert Begland (dkt. 178-1) and as Exhibit 1 to the declaration of Sarah Jackel (dkt. 181).
[5] PG&E Electric Rule No. 1, also approved by the CPUC, sets forth definitions used in other tariff

4

install, inspect and keep in good and safe condition at his own risk and expense, all appropriate protective devices of any kind or character, which may be required to properly protect the applicant's facilities." Tariff Rule 2 § E(1). PG&E's tariff rules are not only explicitly incorporated by the parties' Standby Agreement, but also "have the force and effect of law" and "are binding on the public generally." *See Trammell*, 57 Cal App. 3d at 551. The Court therefore concludes that Tariff Rule 2 creates a duty applicable to Tesoro and may serve as an appropriate basis for a jury instruction.[6]

Perhaps the more significant question is whether Tesoro's duty under Tariff Rule 2 extends to protective devices located at the interconnection between the Cogen and PG&E's grid. Tesoro asserts that "there has been no suggestion that Tesoro's failure to install or operate *its own* protective devices cause, or could have prevented, the outage at the Refinery," drawing a distinction between, on the one hand, devices owned by Tesoro and located at the Refinery and, on the other hand, devices owned by FWM and located at the Cogen. Tesoro Br. at 14 (emphasis added). Much of Tesoro's argument on this point relates to principles of agency, to argue that FWM was not Tesoro's "agent" within the meaning of the second sentence of Section E(1). But the first sentence of the section, which creates a duty, does not discuss the applicant's agents. The Court therefore discusses agency issues separately below in the context of limitations on liability.

The Court agrees with PG&E that whatever arrangements Tesoro made with FWM, Tesoro remained the "applicant" for the purpose of Section E(1) and therefore had a duty to install and maintain appropriate protective devices to protect its facilities. Tariff Rule 2 does not foreclose the possibility that Tesoro could meet that duty by contracting with FWM to have FWM install and maintain the devices, just as a homeowner would likely satisfy his or her duty under this section by engaging an electrician to install appropriate wiring and systems in a home. Under the plain language of the rule, however, it is ultimately Tesoro's duty to provide "appropriate" devices

---

rules. "Applicant" is defined as a "person or agency requesting PG&E to supply electric service or for changes in electric service [sic]." Jackel Decl. Ex. 2.

[6] It is not clear the extent to which this principle is actually in dispute. Although Tesoro objects to using Tariff Rule 2 to establish a duty, Tesoro Br. at 2, it also "has no objection to PG&E arguing the terms of the contract—and pointing out that Tesoro faces obligations to maintain its own protective devices," *id.* at 3.

5

1 to protect the Refinery, regardless of whether Tesoro chose to place such devices on its own
2 property at the Refinery or at FWM's Cogen.

### D. Tariff Rule 2 May Limit PG&E's Liability

Based on the holdings above, it follows that the second sentence of Section E(1) limits PG&E's liability if Tesoro negligently failed to meet the duty established by the first sentence. The parties dispute whether the facts would support that conclusion: PG&E argues that Tesoro maintained control over the protective devices at the Cogen and was negligent in failing to maintain them, while Tesoro argues that the devices fell within FWM's exclusive control. This factual dispute is an issue for trial and need not be decided by the Court in the present procedural posture.

The question remains whether Tariff Rule 2 can serve to limit PG&E's liability if the evidence shows that Tesoro acted prudently in contracting with FWM to provide protective devices, but *FWM* was negligent in providing or maintaining those devices. That question turns on the meaning of the following portion of Tariff Rule 2:

> PG&E shall not be responsible for . . . the negligence, or wrongful act of the applicant *or of any of his agents, employees or licensees* . . . .

Tariff Rule 2 § E(1) (emphasis added). The Court is satisfied at this time that the facts *may* show that FWM acted as an agent of Tesoro within the meaning of this clause, and declines to exclude any evidence or argument on the basis that the clause is not applicable to the case. The question of the precise meaning of the clause is reserved pending supplemental briefing.

### E. Nature of the Limitation of Liability

The parties also dispute the nature of the limiting effect that the second sentence of Section E(1) has on PG&E's liability. PG&E's position—which is not addressed in detail in its brief but is apparent from its proposed verdict form—is that if negligence by "Tesoro or any of its agents, employees, or contractors" played a causal role in the Refinery outage, Tesoro cannot recover anything on either its negligence claim or its contract claim. PG&E Proposed Verdict Form (dkt. 153) at 3, 4. Tesoro contends that PG&E is "wrong" that "if any percentage of negligence can be attributed to Tesoro, it acts as a complete bar to recovery." Tesoro Br. at 1.

The Court holds that Tariff Rule 2 does not create a complete bar to recovery where damages are caused in part by PG&E's negligence. Instead, it describes a form of comparative negligence. The limitation of liability in Tariff Rule 2 pertains only to "loss or damage *occasioned or caused by*" negligence of the applicant or its agent related to protective devices. Tariff Rule 2 § E(1) (emphasis added). If a jury were to determine that damage was caused in part by PG&E's negligence and in part by, e.g., Tesoro's negligent failure to install protective devices, only the portion of damages attributed to Tesoro would have been "caused by" Tesoro's negligence. The portion attributed to PG&E would have been "caused by" PG&E's negligence, and would not fall within the limitation of liability.

PG&E's view—that a limitation of liability for "*any* loss or damage" caused by the applicant precludes all recovery, regardless of the apportionment of fault, *id.* (emphasis added)— might be plausible in a vacuum, but would represent a stark departure from California's background principle of comparative negligence. *See Li v. Yellow Cab Co.*, 13 Cal. 3d 804, 810 (1975) (abandoning "all-or-nothing" contributory negligence and establishing rule of comparative negligence in California). The Court is also mindful of the rule "that if there is an ambiguity in a tariff any doubt in its interpretation is to be resolved in favor of the nondrafter and against the utility." *Pink Dot*, 89 Cal. App. 4th at 415 (citation, internal quotation marks, and brackets omitted). Viewing Tariff Rule 2 in the context of California law, the Court holds that if both PG&E and an applicant were negligent, the rule bars liability only for the portion of damages attributed to the applicant's negligence.

Tesoro contends that PG&E should not be able to rely on Tariff Rule 2 for a "purpose . . . such as comparative negligence" because "PG&E has never raised it as a defense of comparative negligence," but instead listed it as a "limitation of liability" in its Answer. Tesoro Br. at 1. The relevant portion of the Answer, PG&E's fifteenth affirmative defense, reads as follows:

> The First Amended Complaint is barred, in whole or in part, based on limitations of liability established in PG&E's Tariff Rule 2 (reviewed and approved by the California Public Utilities Commission).

Answer (dkt. 35) ¶ 67. The Court holds that this assertion of PG&E's defense is not so narrow as

to preclude a comparative negligence theory. Moreover, the Answer includes two separate affirmative defenses invoking "comparative fault of others" and "comparative fault of Tesoro." *Id.* ¶¶ 60, 61 (capitalization altered). PG&E provided adequate notice of a comparative negligence defense under Tariff Rule 2 or otherwise.

## IV. CONCLUSION

The Court holds that Tariff Rule 2 creates of a duty of Tesoro to provide and maintain appropriate protective devices. Tariff Rule 2 absolves PG&E of liability for damages attributable to Tesoro's or Tesoro's agents' negligence in "in omitting, installing, maintaining, using, operating or interfering with any such protective devices," based on a system of comparative negligence. Jury instructions in this case shall reflect this holding.

In opening statements, and in the evidence, the parties are instructed not to present the actual tariff rules to the jury. At this point, the Court finds that the presentation of the tariffs themselves, like the presentation of statutes, would be confusing, and that confusion outweighs any potential relevance. However, the parties may submit supplemental briefs on the issue— separate from their briefs addressing agency—on the schedule set forth above. In opening statements, the parties may, of course, refer to the facts that the evidence presented at trial will show, including that evidence will show that Tesoro did, or did not, violate any duty imposed by law to install and maintain protective devices.

**IT IS SO ORDERED.**

Dated: January 15, 2016

JOSEPH C. SPERO
Chief Magistrate Judge